UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

S.G., on behalf of S.B.J.,                                                          PLAINTIFF

v.                                             CIVIL ACTION NO. 3:09-CV-422-S

THE CARE ACADEMY, INC., et al.,                             DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff S.G. (on behalf of her son, S.B.J.) sued The Care Academy ("the Academy," now defunct) and individual defendants in state court, asserting state-law tort claims for false imprisonment, intentional infliction of emotional distress, and assault. S.G. subsequently amended her complaint to assert federal constitutional claims under 42 U.S.C. § 1983, whereupon the Academy removed on the basis of this court's federal question jurisdiction, 28 U.S.C. §§ 1331, 1441. We have supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367. For the reasons stated herein we will grant summary judgment to the defense on the federal claims and remand the case to state court.

**I**

The facts necessary for our decision here can be stated briefly. The Academy operated a private, for-profit educational facility in Washington County, Kentucky. It contracted with the Kentucky Department of Juvenile Justice and the Washington County School Board to provide educational, residential, recreational, and other related services to troubled youths. S.B.J., then a fourteen-year-old male student, was referred to the Academy in the fall of 2006 after a series of disciplinary problems (disrupting class, fighting, bringing a knife into the classroom) led to his suspension from the traditional public school system. Though the Academy accommodated some residential students, S.B.J. was not one of them; he took the bus to and from school each day.

On December 14, 2006, Academy employees allegedly executed a strip search on S.B.J. and several of his schoolmates, the ostensible purpose of which was an attempt to locate components of a disassembled CD player, possibly including wires and a needle. (These items, we are told, can be combined with an ink pen to jury-rig a tattoo gun.) The search turned up no contraband. S.B.J. was evidently distressed by this event, and withdrew from the Academy. His mother then filed this lawsuit. The parties moved for summary judgment in state court before the case was removed, and they renew their motions here.

## II

The most expeditious way to deal properly with this case is to ask straightaway whether the defendants acted "under color of law." 42 U.S.C. § 1983. Constitutional civil rights causes of action are available only where there is "state action." *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928 (1982); *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982). "The essential state action inquiry is whether the government has been sufficiently involved in the challenged actions that it can be deemed responsible for the plaintiff's claimed injury. If there is no state action, then the court may not impose constitutional obligations on (and thus restrict the freedom of) private actors." *Yeo v. Town of Lexington*, 131 F.3d 241, 248-49 (1st Cir. 1997) (en banc) (footnote omitted), *cert. denied*, 524 U.S. 904 (1998). If the plaintiffs have not established that there exists at least a genuine question as to whether the Academy was a state actor, we must dismiss their federal claims at this stage. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

*Rendell-Baker*, *supra*, is remarkably similar to our case, and is instructive. Faculty members sued a private school for firing them in alleged violation of their constitutional rights. The Court found no state action, notwithstanding the facts that nearly all of the school's students arrived by

referral from state agencies; that public funds accounted for more than 90% of its operating budget; and that the school was heavily regulated by and under contract with the state. 457 U.S. at 832-33. The school, the Court said, was "not fundamentally different from many private corporations whose business depends primarily on contracts" with the government. *Id.* at 840-41. Additionally, the challenged discharges "were not compelled or even influenced by any state regulation," so it could not be said that the state had directed the school to act as it did. *Id.* at 841. Third, while the school undeniably performed a "public function," that function was not "traditionally the *exclusive* prerogative of the State" because private schools have always existed alongside the public system. *Id.* at 842 (*quoting Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353 (1974)). Finally, there was no "symbiotic relationship" between the school and the state; the "fiscal relationship . . . [was] not different from that of many contractors performing services for the government." *Id.* at 842-43. Though neither side briefed this issue, for all it appears the relationship between state and school here is virtually identical to that in *Rendell-Baker*.

The only possible distinction between the cases is the fact that the plaintiff here is a student rather than a teacher. But we do not think that makes a difference. In a similar case, *Robert S. v. Stetson Sch., Inc.*, 256 F.3d 159 (3d Cir. 2001), a student sued his school, alleging that he had been physically and psychologically abused by its staff. Stetson School was a private, residential institution for youth sex offenders; the plaintiff had been placed there by the Philadelphia Department of Human Services (DHS), though the decision was not mandated by court order (he had not been convicted of any crime) and his mother consented. *Id.* at 162. Then-Judge Alito found no state action in the school's treatment of the child in light of *Rendell-Baker*. The receipt of government funds was insufficient, and the contract and regulations governing the relationship between Stetson

and DHS "did not 'compel or even influence' the conduct on the part of the Stetson staff." *Id.* at 165 (citations omitted). While education was a traditional state function, it was not exclusively so; moreover, "the only schools that offered services similar to those provided by Stetson were private schools." *Id.* at 166. And finally, the court refused an analogy to a person involuntarily committed to a prison or a mental ward, because his legal custodian (DHS) wanted him there, and his mother consented. *Id.* at 166-67.

So far as the record shows (or even suggests), this analysis holds with respect to the present case. The Academy is a private school, and performs a function typically not undertaken by the public education system. It's not clear how much of its budget comes from state contracts, but in light of *Rendell-Baker* even near-total reliance on state money is insufficient to create state action. There is no suggestion that state laws, regulations, or contracts mandate strip searches. And while the Academy refers to itself as a "detention facility," this appears to be a rhetorical move to make its search procedures seem more reasonable. S.B.J. was not forced to enroll by court order or other adjudicative process, and indeed freely withdrew after the incident in question. There is no basis for thinking the plaintiff can prove state action in this case, and we will therefore grant summary judgment to the defense on the federal constitutional claims

## III

This leaves us with only state tort-law causes of action. Jurisdiction here was premised only on the existence of federal questions; those questions are now absent. We may therefore decline to exercise supplemental jurisdiction over the state-law claims. 28 U.S.C. § 1367(c)(3). "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience,

fairness, and comity.'" *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997) (*quoting Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Here the plaintiffs evidently prefer to be in state court (they filed there first), and even if that isn't the case they had no plausible basis for thinking that the requisite state action was present (they did not even try to argue that it was). There is no reason for us to entertain the state claims independent of any federal issues, and we will therefore by separate order remand the case to the Washington Circuit Court, from whence it came. We will also deny as moot but without prejudice various motions related to discovery and trial.